T.C. Summary Opinion 2005-90

UNITED STATES TAX COURT

MARCUS V. AND POLLY A. BOOKER, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 14036-03S.                    Filed July 18, 2005.

Marcus V. and Polly A. Booker, pro se.

Brenda M. Fitzgerald, for respondent.


COUVILLION, Special Trial Judge: This case was heard
pursuant to section 7463 in effect when the petition was filed.[1]
The decision to be entered is not reviewable by any other court,
and this opinion should not be cited as authority.

_____

[1]Unless otherwise indicated, subsequent section references
are to the Internal Revenue Code in effect for the years at
issue, and all Rule references are to the Tax Court Rules of
Practice and Procedure.

Respondent determined deficiencies of $13,755 and $16,705 in Federal income taxes, respectively, for petitioners' 1999 and 2000 tax years, section 6662(a) penalties for the years 1999 and 2000 of $2,751 and $3,341, respectively, and a section 6651(a)(1) addition to tax of $922.70 for the year 2000.

After concessions at trial, noted hereafter, the issues for decision are: (1) Whether petitioners are entitled to dependency exemption deductions under section 151 for the years 1999 and 2000; (2) whether petitioners are entitled to itemized deductions of $11,650 and $13,405 under section 170 for charitable contributions for the years 1999 and 2000, respectively; (3) whether petitioners are entitled to trade or business expense deductions of $14,900 and $15,198 for the years 1999 and 2000, respectively, for supplies; (4) whether petitioners are entitled to trade or business expense deductions of $4,525 and $4,800 for the years 1999 and 2000, respectively, for wages; (5) whether petitioners are liable for section 6662(a) penalties for the years 1999 and 2000; and (6) whether petitioners are liable for a section 6651 addition to tax for the year 2000.[2]

---

[2]Generally, the burden of proof is on the taxpayer. Rule 142(a)(1). The burden of proof may shift to the Commissioner under sec. 7491(a) if the taxpayer establishes compliance with the requirements of sec. 7491(a)(2)(A) and (B) by substantiating items, maintaining required records, and fully cooperating with the Secretary's reasonable requests. Prior to trial, petitioners did not cooperate with respondent in producing books and records to substantiate their expenses. The concessions by respondent

(continued...)

Some of the facts were stipulated. Those facts, with the exhibits annexed thereto, are so found and made part hereof. Petitioners' legal residence at the time the petition was filed was Atlanta, Georgia.

Petitioners lived and worked in Atlanta, Georgia, during the years in question. Mr. Booker is self-employed as a tax return preparer in Atlanta and the surrounding areas. He has been working in this capacity for 28 years. He received his doctor of jurisprudence degree and master of law in taxation degree from the Atlanta Law School but is not licensed to practice law. Mrs. Booker worked as an assembler at a General Motors Corp. facility.

Petitioners untimely filed their 1999 Federal income tax return on June 7, 2000.[3] On that return, petitioners claimed a dependency exemption deduction for Mrs. Booker's mother. Petitioners also claimed an $11,650 itemized deduction for charitable contributions and $19,425 in various trade or business

---

[2](...continued)
were based on documentation produced by petitioners at trial. The burden of proof, therefore, does not shift to respondent under sec. 7491(a). Further, respondent has the burden of production with respect to the penalties and addition to tax pursuant to sec. 7491(c), but petitioners have the burden of proving that the penalties and addition to tax do not apply. Higbee v. Commissioner, 116 T.C. 438, 446-447 (2001).

[3] Although petitioners filed their 1999 return late, respondent did not determine the sec. 6651(a) addition to tax for that year.

expense deductions for Mr. Booker's business. Respondent disallowed the claimed deductions for lack of substantiation.

Petitioners also untimely filed their 2000 Federal income tax return on June 7, 2001. On that return, petitioners claimed a dependency exemption deduction for Mrs. Booker's mother. Petitioners also claimed itemized deductions of $13,405 for charitable contributions and $19,998 for various trade or business expenses deductions in connection with Mr. Booker's business. Respondent also disallowed these deductions for lack of substantiation.

Deductions are a matter of legislative grace, and the taxpayer bears the burden of proving entitlement to any deductions claimed. Rule 142(a); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992). The taxpayer is required to identify each deduction available and show that all requirements have been met. New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934). It is also the taxpayer's responsibility to maintain records sufficient to enable the Commissioner to determine the correct tax liability. Sec. 6001; Higbee v. Commissioner, 116 T.C. 438 (2001); sec. 1.6001-1(a), Income Tax Regs. The taxpayer must substantiate both the amount and purpose of claimed deductions. Higbee v. Commissioner, supra. As previously

discussed, the burden has not shifted to respondent in this case.[4]

With respect to the first issue, petitioners claimed section 151 dependency exemption deductions for years 1999 and 2000 for Mrs. Booker's mother, Carrie Mayfield (Ms. Mayfield). Ms. Mayfield did not reside with petitioners but lived alone in Greenville, South Carolina. During 1999, Ms. Mayfield suffered a number of strokes and spent a portion of the year in the hospital. Petitioners contend they sent Ms. Mayfield money almost every month to help pay her rent and insurance but acknowledged they were not her sole source of support. Ms. Mayfield had other children and grandchildren who often contributed to Ms. Mayfield's support. Ms. Mayfield also received Social Security benefits of approximately $700 a month and, additionally, received Medicare assistance. Petitioners also acknowledged that Ms. Mayfield received her deceased husband's pension every month. The amount of that pension was not disclosed. Petitioners, however, were unable to establish the specific amounts they contributed to Ms. Mayfield for the years in question. Mrs. Booker testified: "I would give her money certain times of the year. Not exactly month per month, like this month I might send her $500, or maybe two months from then, I will send her another $500". Mrs. Booker also testified

_____

[4]See supra note 2.

that one year she gave her mother approximately $6,200 to assist in paying her mortgage and electric bill; however, petitioners could not recall the exact year of the donation or provide any written substantiation for such a payment.

Section 151(c) allows for dependency exemption deductions in certain circumstances. The father or mother of a taxpayer may qualify as a dependent of the taxpayer if the taxpayer provides over half of that individual's support in the calendar year for which the deduction is sought. Sec. 152(a)(4). Although petitioners testified they provided support to Mrs. Booker's mother, their testimony was vague, and they did not establish a definite amount for either year. In addition, petitioners presented no written evidence to substantiate their contributions. Mrs. Booker acknowledged that Ms. Mayfield received at least $700 a month in unrelated support but failed to establish the amount of support Ms. Mayfield received from all sources during the years at issue. On this record, petitioners failed to establish they contributed over half of Ms. Mayfield's support for each of the years in question. Respondent, therefore, is sustained on this issue.

The next issue concerns itemized deductions claimed by petitioners on Schedules A, Itemized Deductions, of their 1999 and 2000 income tax returns. Petitioners claimed substantial deductions on their 1999 and 2000 returns under section 170 for

charitable contributions of $11,650 for the year 1999, consisting of $2,400 by cash or check and $9,250 by other than cash or check, and $13,405 for the year 2000, consisting of contributions of $2,400 by cash or check and $11,005 by other than cash or check.  Respondent disallowed the deductions for both years for lack of substantiation.

Section 170 allows a deduction for charitable contributions during the taxable year if verified as provided in the regulations.  Sec. 170(a)(1).  The term "charitable contribution" includes a contribution or gift to a corporation, trust, or community chest, fund, or foundation, with certain provisos.  Sec. 170(c).  For example, the recipient organization must have been "created or organized in the United States or in any possession thereof, or under the law of the United States, any State, the District of Columbia, or any possession of the United States".  Sec. 170(c)(2)(A).  Furthermore, no part of the net earnings of a qualified organization may inure to the benefit of any private shareholder or individual.  Sec. 170(c)(2)(C).

The charitable contributions deduction is subject to certain substantiation requirements.  Sec. 170(f)(8).  No deduction is allowed for any contribution of $250 or more unless the taxpayer substantiates the contribution by a contemporaneous written acknowledgment of the contribution by the qualified donee organization.  Sec. 170(f)(8)(A).  This written acknowledgment

must state the amount of cash or description of property the taxpayer donated and a statement confirming that no consideration was given to the taxpayer. Sec. 1.170A-13(f)(2), Income Tax Regs. The taxpayer is required to include in the records a "good faith estimate" as to the value of goods or property contributed in kind. Sec. 170(f)(8)(B)(iii).

Petitioners did not establish at trial that they were entitled to any deduction for charitable contributions. They presented as evidence receipts that were furnished blank by charitable organizations and admittedly filled in by petitioners. This evidence purports to establish that, during 1999, petitioners donated, among other things, at least 71 bags of clothing, 4 humidifiers, 2 dehumidifiers, 4 vacuum cleaners, 6 chairs, and 25 wall fixtures. The values claimed on the returns are, in the Court's view, inflated and do not amount to "good faith estimates" of the value of the donated items, nor do they add up to the $9,250 petitioners claimed as donations other than by cash or check. Petitioners offered little explanation as to how they arrived at the fair market value of the items donated, and no explanation as to how the final amount of $9,250, claimed on their 1999 return, was calculated. The Court is not satisfied that petitioners made any donations; therefore, the deduction of $9,250 petitioners claimed as charitable contributions other than cash for 1999 is disallowed.

Petitioners also claimed, on their 1999 return, a deduction of $2,400 for cash donations under section 170. Petitioners claimed this consisted of cash donations made to various churches, Mrs. Booker's mother, and street beggars. When questioned about written substantiation, Mr. Booker responded: "I just made a rough estimate." Any money petitioners gave to street beggars, sometimes referred to as "pan handlers", or to relatives for their support is not deductible under section 170 as charitable contributions. Sec. 170(c). Petitioners did not substantiate the amount of their other contributions, nor did they establish that the organizations they contributed to were qualified organizations. The deduction of $2,400 in cash contributions claimed by petitioners is, therefore, disallowed.

With respect to the year 2000, petitioners also presented filled-in receipts from various charitable organizations listing donations received. At trial, however, Mrs. Booker testified that the lists did not represent items actually donated in 2000, but was "Not 2000. Just--that was a list--he [Mr. Booker] has the forms for the year 2000. I just made that list up * * *. I just made a list of items in which we have replaced over a period of time." Mrs. Booker then testified she was sure she had donated a copier and computer during 2000 but offered no proof of such donations. In addition, petitioners offered no evidence as to the cash donations claimed on their 2000 return. Due to the

lack of clear, convincing testimony and written substantiation, respondent is sustained on this issue, and the entire $13,405 claimed as a deduction for charitable contributions on petitioners' 2000 Federal tax return is disallowed.

The third issue relates to Mr. Booker's trade or business as a tax return preparer and consultant. Mr. Booker did not maintain an office, he merely visited his clients at their business locations. He referred to his activity as a traveling tax service. On Schedules C, Profit or Loss From Trade or Business, of petitioners' income tax returns for 1999 and 2000, petitioners reported the following income and expenses from this activity:

|  | 1999 | 2000 |
|---|---|---|
| Gross income | $23,171 | $20,118 |
| Expenses |  |  |
|     Car and truck | 13,515 | 12,651 |
|     Commissions and fees | 419 | 629 |
|     Office expenses | 3,338 | 3,505 |
|     Rent | 891 | 1,010 |
|     Supplies | 14,900 | 15,198 |
|     Taxes/licenses | 360 | 360 |
|     Travel | -0- | 890 |
|     Meals and entertainment | -0- | 611 |
|     Utilities | -0- | 808 |
|     Wages | 13,300 | 14,215 |
|     Other expenses | -0- | 420 |
| Total expenses | $46,723 | $50,297 |
| Net loss | $23,522 | $30,179 |

In the notices of deficiency, respondent disallowed deductions for the following expenses:

|                      | 1999      | 2000      |
|----------------------|-----------|-----------|
| Car and truck        | $13,515   | $12,651   |
| Commissions and fees | -0-       | 629       |
| Office expenses      | -0-       | 3,505     |
| Rent                 | -0-       | 1,010     |
| Supplies             | 14,900    | 15,198    |
| Taxes/licenses       | -0-       | 360       |
| Utilities            | -0-       | 808       |
| Wages                | 13,300    | 14,215    |
| Total adjustments    | $41,715   | $48,376   |

Section 162 allows a deduction for ordinary and necessary expenses that are paid or incurred during the taxable year in carrying on a trade or business.  Sec. 162(a); Deputy v. duPont, 308 U.S. 488, 495 (1940).  Taxpayers carrying supplies on hand can deduct the costs of those supplies in the amount that they are actually consumed and used in operation during the taxable year for which the return is made, if the cost of the supplies was not deducted for any previous year.  If the supplies are incidental and are carried on hand with no record of consumption kept, the taxpayer may deduct the total cost of such supplies purchased during the taxable year for which the return is made. Sec. 1.162-3, Income Tax Regs.

At trial, respondent conceded the following disallowed expenses:

|                    | 1999        | 2000        |
|--------------------|-------------|-------------|
| Car and truck      | $ 5,650.00  | $ 7,006.00  |
| Supplies           | 1,242.23    | 1,267.07    |
| Taxes/licenses     | -0-         | 360.00      |
| Utilities          | -0-         | 300.00      |
| Wages              | [1]13,825.00 | 9,415.00   |
| Total concessions  | $20,717.23  | $18,348.07  |

[1]In addition to the $13,300 claimed by petitioners as a wage expense on their 1999 income tax return, respondent also conceded an additional $525 claimed by petitioners at trial.  See infra note 6.

With respect to supplies, petitioners contended at trial that they were entitled to amounts in addition to those respondent conceded.  Petitioners, however, presented no documenting information to support their arguments.  Moreover, some of the purchases claimed, but not substantiated, included computers and a copier, which would be capital assets subject to depreciation.  They also presented receipts and copies of checks purportedly for supplies; however, those records do not satisfy the Court that the amount claimed is in excess of what respondent has conceded.  Additionally, some of the other documentation presented appeared to be for personal expenses, which are not deductible under section 262.[5]  Petitioners, therefore, have not established their entitlement to a deduction for supplies in excess of the amounts conceded by respondent.

---

[5]Petitioners offered into evidence two manila envelopes containing receipts purportedly for supplies.  The envelopes included, however, receipts for beer, milk, underclothes, and nail polish remover, which, without explanation from petitioners, appear to be personal expenses.

With respect to petitioners' deductions for wages, respondent, as shown above, conceded the entire amount petitioners claimed on their 1999 tax return and $9,415 of the $14,215 claimed by petitioners on their 2000 tax return. Petitioners claimed at trial that they were entitled to deduct an additional $4,525 for wages not claimed on their 1999 tax return and the remaining $4,800 wage expense claimed on their 2000 tax return that was not conceded by respondent.

Mr. Booker claims that he employed several people to pass out brochures promoting his tax return preparation business. Also, he claims he paid his workers an incentive bonus for every referral that resulted in additional business. The amount of the bonus depended on the type of tax return the client needed prepared. A "long-form" return earned the worker a larger bonus than a "short form" return, and so on. Petitioners paid all of the workers in cash and kept no records of the payments; however, at the end of each taxable year, Mr. Booker claims he issued a Form 1099, Miscellaneous Income, to each person and filed a Form 1096, Annual Summary and Transmittal of U.S. Information Returns, with the Social Security Administration.

The additional wage deduction for 1999 and the remaining wage deduction for 2000 claimed by petitioners consist of amounts paid to one worker, Roy C. Bell.[6]  Mr. Booker testified that Mr.

----

[6]Mr. Booker testified at trial that the $13,300 claimed as a wage expense on petitioners' 1999 tax return included the $4,000 he allegedly paid Mr. Bell during 1999.  The $4,525 he claimed he
(continued...)

Bell worked for him part time passing out brochures and bringing in referrals throughout 1999 and 2000. Petitioners offered into evidence copies of a completed Form 1096 for both 1999 and 2000 that listed nonemployee compensation to Mr. Bell of $4,000 for 1999 and $4,800 for 2000.

Respondent disallowed deductions for the amounts Mr. Booker claimed to have paid Mr. Bell because the Social Security Administration, with which Forms 1096 would have been filed, has no information on record of such payments to Mr. Bell for the years 1999 and 2000. Moreover, respondent averred that the records of the Social Security Administration show that the Social Security number listed as belonging to Mr. Bell does not exist. Also, although the Social Security Administration had a record of all other employees for whose wages petitioners claimed deductions for 1999 and 2000, it had no record of a Form 1099 being issued by petitioners to Roy C. Bell or to a person of another name with the Social Security number petitioners listed

---

[6](...continued)
was entitled to as an additional wage expense deduction actually pertained to another employee, Eric S. Williams. Mr. Booker stated that he forgot to deduct wages paid to Mr. Williams during 1999 on his 1999 income tax return. The copy of the Form 1096 for 1999 petitioner admitted into evidence listed both Mr. Bell and Mr. Williams as wage earners during 1999. In conceding the entire $13,300 wage deduction for 1999, respondent stated the intention to allow a deduction for wages paid to Mr. Williams while disallowing any wage expense deduction pertaining to Mr. Bell. Therefore, respondent also conceded at trial an additional $525 deduction as a wage expense, leaving only $4,000 of the additional $4,525 petitioners sought to deduct for 1999 in dispute.

as belonging to Mr. Bell. If the copies of the Forms 1096 for both 1999 and 2000 petitioners admitted into evidence were authentic, it seems highly unlikely that the Social Security Administration would mistakenly omit Mr. Bell's information for both years. Respondent questioned the authenticity of the copies of Forms 1096 for 1999 and 2000 petitioners admitted into evidence, and petitioners presented no proof the Forms 1096 were actually filed for years 1999 and 2000. In light of petitioners' dubious record keeping and lack of clear and credible testimony, the Court agrees with respondent's conclusion that the copies of Forms 1096 for 1999 and 2000 were not authentic. Petitioners presented no additional evidence, such as canceled checks, establishing the payments to Mr. Bell during these 2 years. Consequently, the Court sustains respondent on this issue. Petitioners are not entitled to any deduction for wages for 1999 and 2000 in excess of the amounts conceded by respondent.

Respondent determined section 6662(a) penalties against petitioners in the amounts of $2,751 for 1999 and $3,341 for 2000. Section 6662 provides for the imposition of a 20-percent penalty for the portion of any underpayment to which the section applies. Sec. 6662(a). Respondent determined that section 6662(b)(1) applied to petitioners because petitioners were negligent or disregarded rules or regulations.

Negligence is defined as "any failure to make a reasonable attempt to comply with the provisions of this title." Disregard includes "careless, reckless, or intentional disregard". Sec.

6662(c). The majority of petitioners' itemized deductions for 1999 and 2000 have been disallowed by the Court. Petitioners presented very little evidence as to how they arrived at many of the amounts listed on their returns. In addition, the majority of their receipts admitted into evidence appear to be either irrelevant or fabricated. The Court holds that petitioners disregarded rules and regulations in preparing their returns for 1999 and 2000 and sustains the section 6662(a) penalties.

Respondent also determined a section 6651(a)(1) addition to tax for the year 2000. A taxpayer is liable for an addition to tax for failure to file a timely return unless such failure "is due to reasonable cause and not willful neglect." Sec. 6651(a)(1). Willful neglect is defined as "a conscious, intentional failure, or reckless indifference." United States v. Boyle, 469 U.S. 241, 245 (1985). Petitioners were required to file a timely Federal income tax return for 2000. Sec. 6012.

Petitioners filed their 2000 Federal income tax return late, on June 7, 2001. When asked at trial why he did not file timely, Mr. Booker claimed he had filed for an extension; however, he had no evidence substantiating his claim. Due to the lack of any written evidence of an extension, the Court holds petitioners are liable for the section 6651(a) addition to tax for 2000.

Reviewed and adopted as the report of the Small Tax Case Division.

                                        <u>Decision will be entered</u>

                              <u>under Rule 155.</u>